UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JINING HUAHUI INTERNATIONAL CO., LTD.<br><br>       Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>       Defendant. | Court No. 24-cv-00111 |

**COMPLAINT**

**Introduction**

There is a long history under the 1994 antidumping duty order on fresh garlic from the People's Republic of China, under which plaintiff Jining Huahui International Co., Ltd. ("Huahui") sought only a fair opportunity to obtain a calculated rate as it begins exporting fresh garlic to the United States. Without its own calculated rate, sales by Huahui to the United States are nearly impossible because the country-wide rate applied to all entries of garlic from Chinese producers and exporters that do not have their own calculated rate, which was initially 376.67% and was converted to a dollars-per-kilogram rate in 2013, now stands at $4.71/kg.

Over the last decade, garlic imports from China have been tainted by accusations in the Netflix food-industry documentary, "Garlic Breath," of Chinese influence attempting to affect antidumping duty administrative reviews to subject Zhengzhou Harmoni Spice, Co. Ltd. (with its affiliated importer, Harmoni International Spice, Inc. (collectively, "Harmoni")) to a recalculation of the $0.00/kg rate that was calculated for it in 2013. *See* ROTTEN: Season 1, "Garlic Breath" (available on Netflix). At the end of the Garlic Breath episode, one U.S. garlic farmer who changed sides to align with Harmoni commented, "nobody's hands are clean." *See*

1

ROTTEN: Season 1, "Garlic Breath" at 6:00 (available on Netflix).

Generally speaking, Chinese garlic exporters seeking a calculated rate to enter the U.S. market have been met by stiff resistance from the petitioners and regular representatives of the U.S. domestic industry, the Fresh Garlic Producers Association (FGPA), and its individual members, Christopher Ranch, LLC, The Garlic Company, and Valley Garlic Inc. But the FGPA in every review since the review covering imports in the period of review (POR) from November 1, 2005, through October 31, 2006 – including in the administrative review covering imports in the November 1, 2021, through October 31, 2022, POR that underlies this action – has allowed Harmoni to escape scrutiny by withdrawing its requests for review of Harmoni. It was revealed in 2016 – in an action taken by Harmoni in which it alleged collusion against it by competitors identified in Garlic Breath - that FGPA member, Christopher Ranch, is one of Harmoni's largest U.S. customers. *See Harmoni Int'l Spice v. Bai*, 2016 U.S. Dist. LEXIS 204242 at *9-*10 (C.D. Cal Nov. 14, 2016).

With the checkered history of garlic imports from China as the backdrop, plaintiff Jining Huahui International Co., Ltd. ( "Huahui") sought only a fair opportunity to obtain a calculated rate – something sufficiently lower than the prohibitive $4.71/kg – as it begins exporting fresh garlic to the United States. Huahui did not get that fair opportunity in the underlying administrative review. Commerce rescinded the review after deciding that Huahui's shipments during the POR were not *bona fide*, on the basis of conclusions that were not supported by substantial evidence or in accordance with law. While Commerce acknowledged that Huahui's sales were made in commercial quantities, at normal times during the POR, with normal expenses – all indicators of *bona fide* sales, Commerce's analysis of the price, resales, arm's length nature, payment timing, and likelihood of future sales led it to conclude that Huahui's

sales were not *bona fide*, and thus to rescind the review.

Commerce's analyses on these latter points required Commerce to compare incomparable transactions, ignore its own established practices, misapply the law, and make assumptions about market prices in the United States without the support of record facts. In view of Commerce's factually unsupported and unlawful decision, this case must be remanded to Commerce to reach a fair decision.

## COMPLAINT

1.Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff Jining Huahui International Co., Ltd. ("Huahui"), by and through its counsel, contests the final results of the Department of Commerce in the antidumping ("AD") duty administrative review of Fresh Garlic from the People's Republic of China for the period of review ("POR") November 1, 2021 through October 31, 2022. The contested determination was published as *Fresh Garlic from the People's Republic of China: Final Results and Rescission of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 48,373 (Dep't of Commerce June 6, 2024) ("*Final Results*").

## JURISDICTION

2.This action challenges certain factual findings, legal conclusions, and determinations in the Department's Final Results in the 2021-2022 Administrative Review of Fresh Garlic from the People's Republic of China. This Court has jurisdiction pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii).

3.The standard of review, as provided in 19 U.S.C. §1516a(b)(1)(B), is whether the determinations, findings, or conclusions of the Department were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

**STANDING**

4. Paragraphs 1 to 3 are re-alleged and incorporated herein by reference.

5. Plaintiff Huahui is a foreign producer and exporter of subject merchandise, fresh garlic from the People's Republic of China.

6. Huahui was a party to and participated in the underlying antidumping duty administrative review now being challenged.

7. Therefore, Plaintiff is an interested party pursuant to 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(A). Plaintiff thus has standing to commence this action under 19 U.S.C. § 1516a(a)(2)(A), (d), 28 U.S.C. § 2631(c), and 28 U.S.C. § 1581(c).

**TIMELINESS OF THIS ACTION**

8. Paragraphs 1 to 7 are re-alleged and incorporated herein by reference.

9. Huahui commenced this action by filing a summons on July 1, 2024, within 30 days of publication of the *Final Results* in the Federal Register on June 6, 2024.

10. This complaint is filed on July 31, 2024, within 30 days after the filing of the summons.

11. This action is therefore timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3(a)(2) of the Rules of the U.S. Court of International Trade.

**STATEMENT OF FACTS**

12. Paragraphs 1 to 11 are re-alleged and incorporated herein by reference.

13. On January 3, 2023, Commerce initiated the administrative review on fresh garlic from the People's Republic of China, covering the period of November 1, 2021, to October 31, 2022. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 50 (Dep't of Commerce Jan. 3, 2023).

14. On December 6, 2023, Commerce published its preliminary results, deciding that Huahui's sales were not *bona fide* and preliminarily rescinding the review. *Fresh Garlic From the People's Republic of China: Preliminary Results, Partial Rescission, and Preliminary Intent To Rescind Antidumping Duty Administrative Review; 2021–2022*, 88 Fed. Reg. 84,782 (Dep't of Commerce Dec. 6, 2023) ("*Preliminary Results*"), and accompanying *Decision Memorandum* ("*Prelim I&D Memo*").

15. Commerce evaluated eight factors: (1) "Price of the Sale," (2) "Whether the Sale was Made in Commercial Quantities," (3) "Timing of the Sale," (4) "Expenses Arising from the Sale," (5) "Whether the Goods Were Resold at a Profit," (6) "Whether the Transaction was Made at an Arm's-Length Basis," (7) "Payment," and (8) likelihood of future sales.

16. Commerce found that factors 2-4 weighed in favor of finding Huahui's sales to be *bona fide*, but that factors 1 and 5-8 weighed against finding Huahui's sales to be *bona fide*.

17. On January 12, 2024, Plaintiff submitted a case brief in response to the *Preliminary Results*, arguing that Commerce's analyses on factors 1, and 5-8 were unsupported by substantial evidence and otherwise contrary to law.

18. Huahui argued that Commerce ignored important distortions in customs data when conducting its factor 1 analysis of price. Huahui argued that Commerce had relied on constructed-export-price ("CEP") sales – that is, sales by the U.S. affiliate or subsidiary of a Chinese shipper rather than the Chinese shipper itself; to evaluate the price of Huahui's sales, which were all export-price ("EP") sales – sales by Huahui, the Chinese shipper to the U.S. market. The declared value of CEP sales typically is much lower than the declared value for EP sales because the CEP shipper can sell merchandise to its U.S. affiliated importer at a low price – reducing duty liability – while making profit margins after importation. In contrast, an EP

5

shipper must make all profits with the sale to the importer, so the declared value is higher, as are the duties paid. Because of the differences between CEP and EP sales, the two cannot be compared when testing whether the declared value of imports is within a range of what can be considered *bona fide*. Commerce denied any requirement to distinguish between the two types of sales, and mistakenly claimed there is no record evidence to support Huahui's argument that Commerce relied upon a distorted comparison. Commerce was wrong on both counts.

19.    Plaintiff also argued that Commerce's decision and evaluation ignored the law and market realities in relation to the treatment of antidumping (AD) duty deposits paid by the importer as an importer cost in the analysis of whether goods were resold at a profit. Commerce included AD duty deposits with the importer's costs even though its practice is to exclude such deposits when calculating the AD duty rate. It further ignores the commercial reality that an importer expects to receive a refund of excess duties to make the transaction profitable.

20.    Plaintiff also argued that Commerce had evaluated the wrong commercial relationship when it conducted the arm's length analysis for Huahui's sales. The statute identifies the sale by the Chinese shipper to the unaffiliated U.S. importer as the sale must be arm's length. *See* 19 U.S.C. § 1675(a)(2)(B)(iv)(VI). Commerce instead evaluated the relationship between the unaffiliated U.S. importer to its customer, reaching an unsupported conclusion about the wrong relationship. Commerce ignored the statute, claiming its analysis was on the basis of all circumstances of the sale, but the relationship between the importer and its customer is not relevant to whether the sale from the exporter to the importer was at arm's length.

21.    Huahui highlighted Commerce's evaluation of aspects of the sales transactions that ignored Commere's own practice. One such aspect, timing of payment, is not a disqualifying

aspect of Commerce's AD calculation Huahui pointed out that Commerce erroneously found this factor *non-bona fide* when the record evidence showed that the importer paid for the garlic shipments.

22. Finally, Huahui took issue with Commerce's claim about the likelihood of future sales, which relied upon assumptions not based upon any record evidence. Commerce relied solely upon price fluctuations, ignoring record evidence of market-price fluctuations, and basing its decision on unsupported assumptions about market price.

23. On June 6, 2024, Commerce published its final results. *Fresh Garlic From the People's Republic of China: Final Results and Rescission of Antidumping Duty Administrative Review; 2021–2022*, 89 Fed. Reg. 48, 373 (June 6, 2024) ("*Final Results*") and accompanying *Issues and Decision Memorandum* ("*Final I&D Memo*").

24. In the *Final Results*, Commerce continued to determine that Huahui's sales were not *bona fide* and rescinded the administrative review without an analysis of the distorted data analysis and market realities of the industry. *See id.*

## STATEMENT OF CLAIMS

### Count One

25. Paragraphs 1 to 24 are re-alleged and incorporated herein by reference.

26. Commerce's rescission of the administrative review in the *Final Results*, based on its determination that Huahui's sales were not *bona fide*, is based on a price analysis of distorted data and a flawed evaluation of other *bona fide* factors and is not supported by substantial evidence or otherwise in accordance with the law.

### Count Two

**27.** Paragraphs 1-26 are re-alleged and incorporated herein by reference.

**28.** Commerce made other decisions in the *Final Results* resulting in an erroneous rescission of the underlying administrative review and is not supported by substantial evidence on the record and is otherwise not in accordance with law.

## **PRAYER FOR RELIEF AND JUDGMENT**

For the reasons stated above, Plaintiff Huahui respectfully requests that the Court:

(a) enter judgment in Plaintiff's favor;

(b) declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(c) remand the matter to Commerce for a determination consistent with the Court's opinion, including the calculation of an antidumping duty margin for Plaintiff; and

(d) grant Plaintiff such other relief as the Court may deem just and proper, including attorney fees and costs under the Equal Access to Justice Act.

Respectfully submitted,

/s/ Irene H. Chen
Irene H. Chen
**VCL Law LLP**
1945 Old Gallows Road, Ste. 260
Vienna, VA 22182
Tel (301) 760-7393
Email: ichen@vcllegal.com

Date: July 31, 2024

*Counsel to Plaintiff Jining Huahui International Co., Ltd.*